PRESENT: Goodwyn, C.J., Powell, Kelsey, McCullough, and Chafin, JJ., and Koontz and Millette, S.JJ.

ANDERS LARSEN TRUST, ET AL.

v. Record No. 210538

OPINION BY
JUSTICE STEPHEN R. McCULLOUGH
May 26, 2022

BOARD OF SUPERVISORS
OF FAIRFAX COUNTY, ET AL.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Dontaé L. Bugg, Judge

Newport Academy[1] seeks to open a residential treatment center for teenage girls. This treatment center would operate from a house located in a residential neighborhood. Several neighbors, who either own houses or live in houses next to the proposed treatment center, objected to Newport Academy's claim that its treatment center was a "by right" use. The County's Zoning Administrator, and later the Board of Zoning Appeals, sided with Newport Academy. On a petition for certiorari, the Circuit Court for Fairfax County concluded that the neighbors lacked standing and dismissed the case. The neighbors challenge this dismissal. For the reasons noted below, we conclude that the allegations made by the neighbors are sufficient to establish that they have standing. Accordingly, we will reverse the judgment of the circuit court and remand the case for further proceedings.

BACKGROUND

Newport Academy purchased a house located at 1318 Kurtz Road, in the Salona Village neighborhood of McLean (the "Property"). It plans to operate a residential treatment center for teenage girls from the home. Some neighbors requested a ruling from the Fairfax County Zoning

---

[1] Newport Academy is operated by respondent Virginia Health Operations, LLC and owned by respondent Monroe RE, LLC. For simplicity, we will refer to these respondents as "Newport Academy."

Administrator to determine whether operating the facility from a house located in a residential neighborhood would require a special use permit.

Newport Academy informed the Zoning Administrator that up to eight girls between the ages of 12 and 17 would stay at the facility for a period of between 45 and 90 days. Newport Academy stated that this was not a drug rehabilitation facility, does not provide detoxification services, and does not admit anyone currently using illicit substances. Staff would be on site 24 hours per day, with at least eight staff members on site between 8:00 a.m. to 7:00 p.m., but no staff would live at the Property. Further, Newport Academy planned to use a shuttle van and off-site parking to minimize the number of vehicles parked at the Property.

The neighbors contend that the facility does not fall within the definition of "Group Residential Facility", which is a "by right" use in this zoning district, and that it should be classified either a "Congregate Living Facility" or a "Medical Care Facility," both of which require a special exception permit to operate in a residential zone. The neighbors fear that drug addicts will populate the treatment center and that the center will, in fact, provide treatment for drug addiction.

The Fairfax County Zoning Administrator concluded that the proposed use of the Property is most similar to a "Group Residential Facility," as defined by Article 20 of the Fairfax County Zoning Ordinances and permitted by Code § 15.2-2291, and, therefore, a special use permit is not required for its operation. The Board of Zoning Appeals affirmed the Zoning Administrator's decision.

The neighbors then sought relief by filing in circuit court a petition for a writ of certiorari against the Board of Supervisors of Fairfax County. Two of the neighbors, Jason Hein and Matthew Desch, own a single-family residence next to the proposed treatment center. The

2

Anders Larsen Trust owns a home that adjoins the proposed treatment center. All three allege that they would be injured by the operation of a treatment center. Specifically, they contend that they will face increased traffic caused by the three shifts of staff entering and exiting the property, patients coming and going, and family visitations. In greater detail, Hein showed the impact of the increased traffic. His evidence included photographs showing 12 cars parked in the newly expanded Newport Academy parking lot as well as a picture of the Newport Academy transport van stuck in a ditch in front of a neighboring house. Similarly, the representative of the Trust explained that her brother suffers from autism and walks everywhere because he cannot drive. Therefore, the increased traffic would create a dangerous situation for him. They also claim that they will experience diminished property values and lessened quality of life. They believe that the proposed facility creates safety and burglary risks should one of the residents in the facility escape. *Id.*

Much of the extensive evidence before the Zoning Administrator and the Board of Zoning Appeals focused on the extent to which the proposed facility will host or treat persons who suffer from drug addiction. The circuit court, however, sua sponte concluded that the neighbors/petitioners lacked standing to challenge the decision of the Board of Zoning Appeals and dismissed the case on that basis. This appeal followed.

ANALYSIS

> The concept of standing concerns itself with the characteristics of the person or entity who files suit. The point of standing is to ensure that the person who asserts a position has a substantial legal right to do so and that his rights will be affected by the disposition of the case.

*Cupp v. Board of Supervisors of Fairfax County*, 227 Va. 580, 589 (1984). The pivotal question is "whether [t]he [complaining party] has a sufficient interest in the subject matter of the case so

3

that the parties will be actual adversaries and the issues will be fully and faithfully developed." *Id.*

In general, only an "aggrieved" party has standing to challenge a zoning decision. Code § 15.2-2314; *see also Friends of the Rappahannock v. Caroline County Bd. of Supervisors*, 286 Va. 38, 47 (2013). In order for a party to be "aggrieved," it must affirmatively appear that such person had some direct interest in the subject matter of the proceeding that he seeks to attack. *Historic Alexandria Foundation v. City of Alexandria*, 299 Va. 694, 697-98 (2021). A party has standing if it can "show an immediate, pecuniary, and substantial interest in the litigation, and not a remote or indirect interest." *Harbor Cruises, Inc. v. State Corp. Comm.*, 219 Va. 675, 676 (1979) (per curiam). It is incumbent on petitioners to allege facts sufficient to demonstrate standing. *Friends of the Rappahannock*, 286 Va. at 50.

Where a party appeals to the circuit court from a decision of the Board of Zoning Appeals, we employ a two-prong test to determine whether a person who does not have an ownership interest in the subject property has standing to challenge a zoning determination.

> First, the complainant must own or occupy real property within or in close proximity to the property that is the subject of the land use determination, thus establishing that it has a direct, immediate, pecuniary, and substantial interest in the decision.
>
> Second, the complainant must allege facts demonstrating a particularized harm to some personal or property right, legal or equitable, or imposition of a burden or obligation upon the petitioner different from that suffered by the public generally.

*Id.* at 48. "Complainants do not need to establish that the particularized harm has already occurred." *Id.* at 49.

4

"We review de novo the question of whether the appellants' factual allegations were sufficient to establish standing, as this issue presents a question of law." *Platt v. Griffith*, 299 Va. 690, 692 (2021).

The first element of the test for standing in zoning cases is not in contention here. All three petitioners own property immediately adjacent to the proposed treatment center. As to the second element, the petitioners allege that their property values will be diminished by the operation of this facility. Loss of property value, especially for owners of parcels immediately adjacent to the property, can constitute an interest distinct from those of the public at large. It is entirely plausible that operating a treatment center in an otherwise entirely residential neighborhood can lead to diminished value of the immediate neighbors' properties. A distinctive and non-trivial "pecuniary" harm is generally sufficient to establish standing. Such a harm constitutes an "immediate, pecuniary, and substantial interest" in the litigation rather than a "remote or indirect interest." *Historic Alexandria Foundation*, 299 Va. at 698.[2] In addition, the neighbors/petitioners allege that their enjoyment of their property will be diminished by the fact that there will be three shifts of staff coming and going, and residents and visitors will likewise be driving to and from the property. We conclude that under the circumstances of the present litigation the neighbors' allegations are sufficient to survive a demurrer on the question of standing.[3]

---

[2] We do not hold that a bare allegation of diminished property value, no matter the context, will suffice to establish standing. We do hold that the allegation of diminished property values in this case, allegations made by the immediate neighbors of a proposed commercial establishment, a treatment center, in what had previously been an entirely residential neighborhood, are sufficient to survive dismissal on the basis of lack of standing.

[3] The neighbors' allegations about the safety risks posed by the teenage girls who will attend Newport Academy are on this record entirely implausible and speculative.

*Friends of the Rappahannock* is distinguishable. In that case, several landowners challenged a special use permit for a sand and gravel mining operation located on a 514-acre tract. The property was already zoned for industrial use and the County imposed conditions to the issuance of the permit "regarding pollution, particulate matter, and noise." 286 Va. at 50. One complaining party owned a leasehold interest and a right of first refusal in adjoining land and used the land "for duck hunting, fishing, and river access." *Id.* at 42. His concern was that "industrial activity at the site will frighten away the wildlife, prevent or deter new wildlife from entering the area, and render the property useless for hunting, causing him harm." *Id.* A second complaining party owned "164 acres of farmland adjacent to the site" and rented a farmhouse on this tract. *Id.* This person contended "that mining activities at the site will interfere with her right-of-way to the river, make it more difficult to find tenants for the farmhouse, and create problematic noise and airborne particulate conditions." *Id.* A final group of complaining parties lived in a subdivision directly across the river, approximately 1,500 feet away from the mining property. Their homes were further separated from the river by 200 feet of open space. They expressed a concern about the activities ending "the scenic beauty of the location" and increasing "noise, dust, and traffic from barges and commercial boats in a manner that will alter their quiet enjoyment of the area." *Id.* at 43. One of the complainants worried about the impact of the dust on their children, one of whom was asthmatic. *Id.*

This Court concluded that "[t]he individual complainants do not allege any facts to indicate that the conditions imposed by the permit would be inadequate to protect their property rights." *Id.* at 50. The mine was already zoned for industrial use, the special use permit was subject to a number of conditions, and a significant distance separated the complaining parties and their activities from the mine. Ultimately, the complainants in *Friends of the Rappahannock*

6

failed "to plead facts sufficient to claim particularized harms to rights not shared by the general public." *Id.* at 49.  Here, in contrast, we are dealing with a commercial establishment in a residential neighborhood, and the complaining parties live in or own single-family homes immediately next to the proposed treatment center.  Their allegations of diminished property values and increased traffic to and from the residence rise beyond mere speculation and suffice to allege standing.[4]

The circuit court never reached the merits of the neighbors' challenge to the decision of the Board of Zoning Appeals.  Accordingly, we reverse and remand for further proceedings.

CONCLUSION

For the foregoing reasons, we will reverse the judgment of the circuit court that the neighbors/petitioners lack standing and we remand the case for further proceedings.

*Reversed and remanded*.

---

[4] To the extent there is a factual contest concerning the allegations that purport to establish standing, the circuit court may hear evidence to resolve the factual dispute, either pre-trial or during the course of the trial.  If the court resolves the factual contest against the complaining party, the court must dismiss the case for lack of standing.